UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JEFFREY A. TEDRICK,**

    **Plaintiff,**

v.

    Civil Action 2:09-cv-0763
    Judge John D. Holschuh
    Magistrate Judge E. A. Preston Deavers

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

## ORDER

Plaintiff, Jeffrey A. Tedrick, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the Court for consideration of the August 9, 2010 Report and Recommendation of the Magistrate Judge. (Doc. # 19.) The Magistrate Judge recommended that the Court overrule Plaintiff's Statement of Errors and affirm the decision of the Commissioner denying him disability benefits. For the reasons stated below, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation. Accordingly, the Commissioner's decision is **AFFIRMED.**

### I.

Plaintiff, Jeffrey Tedrick, was born May 10, 1959. (R. at 59, 103.) He has a tenth grade "limited" education and past work experience as a construction laborer and as an oil drilling laborer. (R. at 134, 139, 155-62.) On November 11, 2000 while at work, Plaintiff slipped from a

ladder, fell approximately five to six feet, and landed on his left shoulder. (R. at 211). The emergency room treating physician, Dr. McCoy, reported "noted deformity" of the left shoulder and "a markedly decreased range of motion." (*Id.*) X-rays showed "anterior dislocation of the humeral head." (*Id.*) Over the next five years, Plaintiff underwent rotator-cuff surgery, and two cervical- disc fusion surgeries.

On December 16, 2003, Plaintiff, at the age of 44, filed his application for disability insurance benefits, alleging that he has been disabled since October 1, 2001 because of depression, high blood pressure, numbness to his arms and hands, dislocation of anterior humerus left shoulder, cervical sprain, and herniated discs at C3-4, C4-5, C5-6, and C6-7. (R. at 103-05; 133.) His last insured date for disability insurance benefits was December 31, 2006. (R. at 109.) The Social Security Administration initially denied Plaintiff's application and did so again upon reconsideration. (R. at 69-79.)

Upon Plaintiff's request, an Administrative Law Judge ("ALJ") held two hearings, on May 10, 2006 and June 12, 2007, at which Plaintiff, represented by counsel, appeared and testified. A medical expert and a vocational expert also testified. On July 31, 2007, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. 41–61.) The ALJ found that Plaintiff could not perform his previous work, but concluded that he retains the ability to perform work at a limited light exertional level. (R. at 55.) Further, the ALJ concluded that, considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. On July 8, 2009, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 6-8.)

In his Statement of Errors, Plaintiff set forth three arguments in support of his assertion that the decision of the Commissioner denying benefits should be reversed.  First, Plaintiff argued that the ALJ's conclusion that Plaintiff's mental impairment does not meet or medically equal Listing 12.04 related to his psychological impairment is in error.  Plaintiff further contended that the ALJ failed to consider the combination of his impairments in concluding that Plaintiff did not meet or medically equal Listing 1.04, which relates to disorders of the spine.  Finally, Plaintiff argued that the ALJ erred by giving the most weight to the medical expert at the hearing, Dr. Hutson.  The Magistrate Judge issued a Report and Recommendation rejecting Plaintiff's assertions and recommended that Commissioner's final decision be affirmed.  Plaintiff timely filed Objections to the Report and Recommendation.

Plaintiff's Objections, however, relate to the ALJ's decision in this case to rely on the testimony of the medical expert ("ME") and the ALJ's purported failure to distinguish between medical versus non-medical statements before discounting the weight he gave to the opinions of Plaintiff's family and treating physician, Dr. Holtzmeier.   Plaintiff again maintains that the ALJ's findings that he did not meet or equal the Listing 1.04 constitutes reversible error.[1]

**II.**

---

[1] Plaintiff does not object to the Magistrate Judge's finding regarding Plaintiff's psychological impairments under Listing 12.04.  He apparently also has abandoned his claim that the ALJ failed to consider the combination of his impairments in concluding that Plaintiff did not meet or medically equal Listing 1.04.  Plaintiff has raised neither of these issues in his Objections.   Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007).

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice withing which the decision-makers can go either way, without interference by the courts.' " *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal; citation omitted). Even if supported by substantial evidence, however, " 'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

**III.**

The issue before the Court is whether the ALJ erred in concluding that Plaintiff's impairments did not meet or equal the requirements of Listing 1.04. This Listing relates to physical impairments and disorders of the spine, such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture, resulting in compromise of a nerve root or the spinal cord. In addition, in order to meet Listing 1.04, a claimant must also demonstrate the following:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

The Magistrate Judge, in her Report and Recommendation, explained why the ALJ did not err in his reliance on the ME, Dr. Hutson, or in the determination that Plaintiff's impairments did not meet or equal Listing 1.04A as follows:

> The ALJ determined that Plaintiff's conditions did not meet or equal Listing 1.04(A). (R. at 54.) The record reveals that, although Plaintiff had a medically documented cervical spine disorder, the medical evidence did not demonstrate that Plaintiff satisfied all of the Listing criteria. Although some of the findings required by the listing are present, the record does not contain any evidence related to the requisite of "motor loss (atrophy with associated muscle weakness or muscle weakness).". 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.
>
> Plaintiff contends the ALJ erred by giving the most weight to the opinion of the medical expert who testified at the administrative hearing, Dr. Hutson, when, according to Plaintiff, Dr. Hutson testified to a "misleading interpretation of the Listing . . . ."
>
> When asked what would be required to meet or equal listing 1.04, Dr. Hutson testified as follows:
>
>> You almost essentially have to have a paralysis of certain muscles and complete loss of reflexes and complete loss of sensation in the

5

>appropriate distribution in the upper extremity. Excuse me. Dr.
>Thompson is a neurologist. A neurologist normally examines the
>sensation in the extremities including light touch and pinprick and
>that was not even mentioned in this record.

(R. at 712.)  Plaintiff argues that Dr. Hutson's opinion is misleading because [he] did not have all the medical evidence in his notes. To the extent Plaintiff contends that the medical expert was missing information, the record does not bear out his contention.  Dr. Hutson testified that he had all the exhibits contained in the transcript.  (R. at 708.)   Furthermore, Dr. Hutson testified at both hearings that he had all the exhibits. (R. at  671, 708.)  The ALJ had no reason to believe Dr. Hutson did not review the record.  Merely because Dr. Hutson testified that the record contained "no loss of neurological function" does not automatically compel the conclusion that he had not reviewed the medical evidence. The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the administrative law judge, a who is not a medical professional, may understand. *See, Richardson v. Perales,* 402 U.S. 389, 408 (1972). The Commissioner's regulations provide that an ALJ [who] "may also ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. § 404.1527(f)(2)(iii).

>The record shows that Dr. Hutson considered all of the pertinent medical evidence over the relevant time period in conjunction with Plaintiff's testimony of his activities. (R. at 664-68; 709-13.)  For example, Dr. Hutson specifically addressed Dr. White's notation that on October 25, 2005, following Plaintiff's second surgery, Dr. White reported Plaintiff's neurological examination as being normal. (R. at 709.)  Dr. Hutson continued that in December 2006, Dr. White reported that Plaintiff's radiculopathy has been resolved and Plaintiff's neurological examination was again reported as being normal. (*Id.*)

>Dr. Hutson testified that when Plaintiff saw Dr. Thompson in September 2006, his gait was normal and that Dr. Thompson described slight weakness of the biceps and triceps muscles on the right side and the grip and fine finger function were normal. (R. at 710.)  Dr. Hutson continued that Dr. Thompson reported the reflexes on the right biceps, triceps and Brachioradialis were absent. (*Id.*)  Dr. Hutson then testified as to Dr. Thompson's functional capacity opinion. (*Id.*)  Dr. Hutson also testified that Dr. Thompson did not include light touch and pinprick in his evaluation. (R. at 712.)

(Report and Recommendation, 29-31.)

In his Objections, Plaintiff focuses on the ALJ's reliance on the ME's testimony.  An

6

examination of the administrative transcript reveals, however, that the ME reviewed all the records and testified that Plaintiff did not have the appropriate neurological loss to equal the severity of Listing 1.04A (R. at 668, 672, 708-11).  Plaintiff presents no evidence to show that the objective findings support his position that he did, in fact, meet or equal Listing 1.04A.  Rather than point to objective evidence in the record to support his claim, Plaintiff continues to challenge the ME's testimony.  Plaintiff contends that the ME's testimony was unsupported and that, therefore, the ALJ's decision was likewise untenable.

Plaintiff inaccurately describes the reliance the ALJ placed on the testimony of the ME in determining that Plaintiff's impairments did not meet or equal Listing 1.04A.  The ALJ did not specifically rely on the ME's testimony in arriving at his conclusion. (R. 54-55.)  In all events, the objective findings do not show that Plaintiff met or equaled all the requirements for the Listing.

The record reveals that Plaintiff had a documented cervical spine disorder.  The medical findings, however, did not demonstrate that Plaintiff satisfied all of the Listing criteria.  Specifically, the record does not contain requisite evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness). " 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A. The ME's testimony to the effect that Plaintiff did not meet or equal the Listing because the evidence revealed that he did not have "the appropriate loss of neurological function . . . in the upper extremities. [Plaintiff has] some weakness here and there . . ." is supported by the record.  (R. at 711.)   For instance, most of the examinations between Plaintiff's alleged onset date and his second surgery did not reflect any muscle weakness.  (R. at 243, 326, 368, 374, 384, 387, 396, 400, 402-03, 405, 419, 565.)  When Plaintiff did have documented upper extremity

7

weakness prior to his second surgery in August 2005, almost all of the findings were described as "slight." (R. at 227, 233, 310, 315, 369, 371, 376, 392-94.) Furthermore, his documented weakness was not in a consistent location, ranging from his left or right shoulder, to his right biceps, or to his left or right adbuctor. (R. 227, 233, 369, 376, 392-94, 410, 412.) Some weakness findings were characterized as "give-way." (R. 431-32, 435-36). Further, after his surgery in August 2005, Plaintiff continued to have almost all normal findings upon strength testing (R. at 550, 556, 584, 597, 617, 631). Although Plaintiff complained of pain, Dr. White opined in December 2005 that Plaintiff had a hyperpathic pain response, which seemed out of proportion to the objective findings. (R. at 584.) Furthermore, the medical records reveal no no evidence of any atrophy since his alleged onset date. (R. at 315, 367-69, 372, 384, 387, 392-93, 396, 402, 405, 565, 607.) Given these findings, Plaintiff did not meet or equal the requirements of Listing 1.04A. Based on the evidence of record, the Court concludes that the ALJ reasonably found that Plaintiff's impairments did not, either singly or in combination, equal the Listing.

Plaintiff also contends that the ME employed a definition of the requirements of the Listing that has no resemblance to the text of the Listing itself. (Pltf's Objs. at 3.) Dr. Hutson, the ME, testified that this factor required "almost essentially . . . a paralysis of certain muscles and complete loss of reflexes and complete loss of sensation in the appropriate distribution in the upper extremity." (R. at 712.) The Court finds no merit to Plaintiff's assertion. Regardless of the ME's interpretation of the requisite severity and amount of loss of neurological functioning required by the Listing, Plaintiff failed to meet or equal all the requirements of Listing 1.04A.[2]

---

[2] In this section of his Objections, Plaintiff variously and generally contends that the ALJ erred in weighing the ME's opinion over that of the treating physician. (Pltf's Objs. at 2-4). Plaintiff, however, does not identify the treating physician to whom he refers, and does not

The ALJ's decision is supported by substantial evidence.  Plaintiff's Objections related to the ALJ's determination that he did not meet or equal Listing 1.04A are **OVERRULED**.

Plaintiff also contends that the ALJ improperly dismissed the opinions of Dr. Holtzmeier. (Pltf's Objs. at 4-5.)  Citing *Lancaster v. Commissioner*, 228 Fed. Appx. 563, 576 (6th Cir. 2007), Plaintiff contends that an ALJ committed reversible error by failing to draw a clear distinction between the medical statements and the non-medical statements of a treating physician, while rejecting that physician's opinion.  In *Lancaster*, the ALJ found that the treating source's

> opinion of disability and his specific assessments of the claimant's residual functional capacity are not well-supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the other substantial evidence in the record, including the broad range of activities of daily living in which he is able to engage.

*Id*. at 576-77.  The distinction is important because "regulations differentiate between physician opinions concerning what a claimant can still do and the claimant's physical and mental restrictions, which the Commissioner will consider, and a physician's statements such as 'a claimant is disabled' or 'unable to work,' which are not medical opinions, but opinions on issues reserved to the Commissioner." *Id.* (citing 20 C.F.R. §§ 404.1527(a), (b), and (e)). The Sixth Circuit held that a clear distinction between the physician's "medical and non-medical statements" was "not set forth," and thus reversed the decision. *Id*.

---

develop his position in this regard with any specificity whatsoever.  As the Commissioner points out, a party cannot rebut an argument that is so undeveloped. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")

*Lancaster* is clearly distinguishable from the case at bar.  In *Lancaster*, the ALJ applied an improper standard to the treating physician's opinions regarding disability and provided virtually no analysis in determining that his opinions were not entitled to deference.  Here, by contrast, the ALJ comprehensively set forth his reasons, and applied the appropriate legal standard:

> It is acknowledged that Dr. Holtzmeier, family practice physician, has opined that the claimant is disabled.  In January 2006, he stated that the claimant "has markedly diminished range of motion of cervical spine," and " diminished function of his upper extremities," such that he is "unable to work any form of gainful employment" . . . .  at the same time, Dr. Holtzmeier completed a physical function capacity assessment which he indicated that the claimant could lift/carry only 1 to 5 pounds occasionally, and 6 to 10 pounds rarely; and could do no reaching, handling or fingering with either upper extremity.
>
> The ultimate conclusion as to whether an individual satisfies the statutory definition of "disability" is an issue that is reserved to the Commissioner of Social Security.  (SSR96-5p).  An opinion on the nature and severity of a claimant's impairment is entitled to controlling weight, but only when the following conditions are met: (1) first giving the opinion is a "treating source" as defined in the regulations; (2) the opinion is well-supported by medically- acceptable clinical and laboratory diagnostic techniques; and (3) the opinion is not inconsistent with other substantial evidence in the case record.  (20 CFR 404.1527).   When evaluated under these guidelines, Dr. Holtzmeier's opinion as to the claimant's disability status cannot be given controlling, or even great, weight as it fails on points two and three.
>
> The above assessment is neither well-supported by medically-acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record.  It is contrary to the weight of the evidence in contradiction to claimant's activities of daily living.   His opinion is also inconsistent with those of Dr. Hutson, the orthopedic medical expert, who had the opportunity to review the medical evidence in its entirety and hear the claimant testify, as well as Dr. Thompson and BBD medical consultants.  As Dr. Thompson's consultantive examination was performed rather recently, in September 2006, any progressive deterioration in the claimant's condition would have been taken into consideration . . . Based on the foregoing, Dr. Holtzmeier's opinion that the claimant has been unable to work (for a period of 12 months or more) prior to the expiration of his date last insured, or anytime through the date of this decision, cannot be accepted as controlling or accorded deferential weight.

(R. at 56-57) (citations to Record omitted).  Contrary to Plaintiff's assertions, the ALJ's rejection of Dr. Holtzmeier's opinion was far from "summary."  As the Magistrate Judge found in her Report and Recommendation:

> In assessing Plaintiff's residual functional capacity , the ALJ gave the most weight to and relied primarily on Dr. Hutson's and Dr. Thompson's opinions concerning Plaintiff's limitations. (R. at 55-56.)  Rather than crediting Dr. Holtzmeier's opinion, the ALJ reasonably placed greater weight on certain non-treating physicians by applying the "specialization" factor permitted by the Regulations.  *See* 20 C.F.R. §404.1527(d)(5) (more weight is generally placed on the opinion of a specialist about medical issues related to his or her specialty than to the opinion of non-specialist).  When summarizing the record, the ALJ explained that Dr. Hutson's specialty is orthopedics (R. at 45), Dr. Thompson's speciality is neurology (R. at 47), which entitle their opinions to greater weight than that of Dr. Holtzmeier, a family practice physician. (R. at 56.) The ALJ reasonably determined that Dr. Hutson's assessment was more consistent with Plaintiff's self-described activities of daily living, and the opinions of the state agency doctors. (*Id.*)  The ALJ also considered and incorporated the lifting restrictions imposed by Drs. Klyop and Caldwell in assessing Plaintiff's residual functional capacity.  Based on the record as a whole, the ALJ's decision to give the most weight to the opinion of Dr. Hutson is supported by substantial evidence and was not in error.

(Report and Recommendation, 31.)  For these same reasons, the Court concludes that the ALJ was justified in rejecting Dr. Holtzmeier's opinion, and that he sufficiently drew a clear distinction between the medical statements and the non-medical statements of the treating physician.  Accordingly, Plaintiff's Objections to the Report and Recommendation is not well-taken and is **OVERRULED**.

**IV.**

The Court, having reviewed the record *de novo*, determines that there is substantial evidence supporting the ALJ's determination that Plaintiff is not disabled, as defined in the Social Security Act. Accordingly, the Court **OVERRULES** Plaintiff's Objections (Doc. 20) and **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 19). The Commissioner's decision is **AFFIRMED,** and this action is **DISMISSED**.

The Clerk shall enter final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date: September 29, 2010                                     **/s/ John D. Holschuh**
                                                            John D. Holschuh, Judge
                                                            United States District Court